IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| TRUSTEES OF THE ROOFERS AND, ) <br> WATERPROOFERS LOCAL NO. 44 ) <br> PENSION PLAN, et al., ) <br> ) <br>     **Plaintiffs,** ) <br> ) <br> v. ) <br> ) <br> ) <br> SOUTHWEST REFINISHERS, INC., ) <br> ) <br>     **Defendant.** ) | CASE NO.    1:18 CV 764 <br><br><br><br><br><br> JUDGE DONALD C. NUGENT <br><br><br> **MEMORANDUM OPINION** |

This matter is before the Court on the Motion for Summary Judgment filed by Plaintiffs, Trustees of the Roofers and Waterproofers Local No. 44 Pension Plan, Trustees of the Roofers & Waterproofers Local 44 Welfare Fund, and Trustees of the Roofers & Waterproofers Local 44 Joint Apprenticeship & Training Committee. (Docket #36)

I.    **Factual and Procedural Background.**[1]

On April 4, 2018, Plaintiffs, the Trustees of multiemployer pension and welfare benefit plans, as defined by the Employee Retirement Income Security Act of 1974 ("ERISA") §§ 3(1)

---

[1] The facts as stated in this Memorandum Opinion and Order are taken from the Parties' submissions. Those material facts that are controverted and supported by deposition testimony, affidavit, or other evidence are stated in the light most favorable to the non-moving Party.

and (2), 29 U.S.C. §§ 1002(1) and 1002(2)("the Funds"), filed this action against Defendant, Southwest Refinishers, Inc. d/b/a Southwest Companies, Inc. ("Southwest"), on behalf of the Funds and their Beneficiaries, the members of the Roofers & Waterproofers Local 44 Union ("Local 44"). This action began as a "Complaint to Compel Audit."

Southwest is a general contractor, performing a variety of construction-related services for its clients and customers. Southwest is an employer as defined by ERISA § 3(5), 29 U.S.C. § 1002(5); assented to be bound by the terms and provisions of the Local 44 Collective Bargaining Agreement ("CBA"); and, is subject to the provisions of the Funds' Trust Agreements and Declarations. The CBA's jurisdiction is defined by both the type of work performed ("craft jurisdiction") and where the work is performed ("territorial jurisdiction"). The craft jurisdiction of the Local 44 includes various types of work related to the roofing and waterproofing trades. (CBA at Article I, Sec. 2.) The territorial jurisdiction of the CBA includes work performed within Cuyahoga, Lake, Geauga, Ashtabula, Erie, Sandusky and Lorain Counties. (Id. at Article I, Sec. 1.) Employers who subcontract work within the CBA's jurisdiction must also comply with the terms and conditions of the CBA. (Id. at Article VII, Sec. 5.)

The CBA and the Trust Documents require employers to contribute to the Funds based on the number of hours of work their employees perform within the jurisdiction of the CBA. Employers have a statutory duty to make these contributions pursuant to ERISA § 515, 29 U.S.C. § 1145. (Id. at Article X.) Pursuant to the CBA, an employer's failure to make timely contributions to the Funds results in a delinquency assessment penalty of 10% of the amount due and the accumulation of interest at 2% per month until the amount due is paid, along with court costs, attorneys' fees and expenses incurred by the Trustees in the collection of contributions due. (Id. at Article XX, Secs. 5 and 6.)

Pursuant to Article XX, Section 5, of the CBA, employers are subject to an audit or examination of their records in order to determine whether the employer is making full and prompt contributions owed to the Funds. The CBA reads as follows:

> Each Employer agrees to permit an audit or examination of such books, records, papers or reports of the Employer as may be necessary in the discretion of the auditor, an independent certified public accountant, as selected by the Trustees, to determine whether the Employer is making full and prompt payment of all sums required to be paid to the fringe benefit funds.

(Id. at Article XX, Section 5.) If the audit concludes the employer has a "substantial deficiency in payments" due, the employer may also be assessed the costs of performing the audit. (Id.)

In or around November 2017, Southwest was notified by letter that it had been selected for an audit. (Declaration of Terry Otto ("Otto Dec."), Docket #36-6 at Paragraph 4.) Southwest failed to respond to the letter and did not respond to follow-up correspondence requesting Southwest's compliance. (Id.) On April 4, 2018, the Funds filed their Complaint in this case to compel Southwest's compliance with the audit requirements of the CBA and to collect due and unpaid contributions.

On February 13, 2019, Southwest entered into a Stipulated Order, requiring it to submit to an audit with 60 days. (Docket #s 15 and 16.) The Auditing Firm retained by the Funds issued a letter to Southwest requesting certain categories of business records and documents necessary for its review. (Declaration of John Kerulis ("Kerulis Dec."), Docket #36-1 at Paragraph 2; Letter, Docket #36-2.) Southwest did not produce any documents within the 60-day time frame. A Status Conference was held on May 17, 2019, at which time the deadline to produce documents was extended until June 17, 2019. Southwest again failed to produce any documents. On June 27, 2019, the Funds filed a Motion for an Order to Show Cause based on

-3-

Southwest's failure to comply. (Docket #18.) Southwest did not respond and a hearing was set for July 15, 2019. (Docket #19.)

Three days prior to the show cause hearing, Southwest produced some of the documents requested by the Auditor. (Kerulis Dec. at Paragraph 4; Docket #20.) On July 15, 2019, after reviewing the documents produced, the Auditor emailed Counsel for Southwest to request additional information. (Kerulis Dec. at Paragraph 5; Docket #36-3.) Again, Southwest produced some, but not all, of the requested documents. On August 12, 2019, the Auditor emailed a list of the outstanding documents to Counsel for the Funds, which was forwarded to Counsel for Southwest the same day. (Kerulis Dec. at Paragraph 6.) On September 20, 2019, Southwest uploaded additional bank records and Counsel for Southwest indicated that Southwest had produced all responsive documents. (Id. at Paragraph 7.)

On October 28, 2019, based on an examination of the records provided by Southwest, the Auditor found that Southwest owed the Funds a total of $4,688,456.59 in unpaid contributions for the period of January 1, 2016 through June 30, 2019. (Kerulis Dec. at Paragraph 8; Docket #36-5.) Due to incomplete documentation, the Auditor's findings were based, in part, on several assumptions as summarized in the Auditor's Report. (Kerulis Dec. at Paragraph 9; Docket #36-5.) The Report was produced to Southwest on November 7, 2019.

Prior to the completion of the Audit, the Parties had scheduled a mediation for November 21, 2019. (Docket #24.) After receiving the Report, Southwest requested a continuance of the mediation to allow it time to review the audit's findings and meaningfully prepare for mediation. Counsel for the Funds stipulated to the continuance with the following conditions aimed at ensuring mediation would be productive: (1) Counsel for both Parties, along with the Auditor,

-4-

would participate in a telephone conference at 11:00 a.m. on November 22, 2019, so that the Auditor could explain his Report to Counsel for Southwest and answer any questions; (2) Southwest would have until December 6, 2019 to submit any supplemental documents in rebuttal of the Auditor's Report; and, (3) Counsel and Parties would meet in person on December 17, 2019 at 10:00 a.m. to engage in pre-mediation discussion. (Docket #25 at p. 2.) The Court granted the Parties' stipulated continuance and rescheduled the mediation for January 14, 2020. (Docket #26.)

The November 22, 2019 telephone conference was rescheduled and held on November 26, 2019 with all Parties participating. The Auditor explained the Report and answered Southwest's questions, providing examples of documents Southwest could provide to contradict or adjust the Report's findings. (Kerulis Dec. at Paragraph 10.) Southwest did not produce any documents by December 6, 2019 – the previously agreed upon date – nor did Southwest attend the agreed upon pre-mediation meeting on December 17, 2019. The Funds then moved to cancel the January 14, 2020 mediation. The mediation was canceled and a deadlines for dispositive motions were set. (Docket #s 27 and 28.) The Funds filed an Amended Complaint on January 16, 2020, setting forth a single claim for delinquent contributions under ERISA §§ 502, 515 and the Labor Management Relations Act of 1947, 29 U.S.C. § 185, based on the findings of the Audit. (Docket #30.)

## II. Motion for Summary Judgment.

The Funds filed their Motion for Summary Judgment (Docket #36) on March 23, 2020, seeking due and unpaid contributions as calculated by the Auditor. The Funds argue that Southwest violated ERISA, 29 U.S.C. § 1059(a)(a), by failing to "maintain records with respect

to each of [its] employees sufficient to determine the benefits due or which may become due to such employees;" that Southwest's failure to maintain adequate records shifted the burden to Southwest to produce contrary evidence and rebut the Auditor's assumptions; and, that because Southwest failed to produce any additional documents or evidence to the Funds and otherwise failed to articulate any form of rebuttal or challenge to the Auditor's findings or methodology – despite multiple opportunities to do so – the Report is sufficient proof of the contributions owed. The Funds seek an award of $4,688,456.59, representing unpaid fringe benefit contributions found due and owing for the period of January 1, 2016 through June 30, 2019. The Funds also seek liquidated damages, interest and attorneys' fees pursuant to Article XX, Sections 5 and 6, of the CBA, and ERISA, 29 U.S.C. § 1132(g), including a delinquency assessment of 10% of the amount due ($468,845.66) plus 2% interest per month thereafter; all court costs, attorneys' fees and other expenses incurred by the Trustees in the collection of the delinquent contributions (to be briefed separately); and, the costs of the audit and examination ($1,833.00).

  Southwest filed its Brief in Opposition on July 10, 2020. (Docket #41.) Attached to its Brief in Opposition were the Affidavit of Michael Tomasone, President of "Southwest Companies All Purpose Contractors, Inc. dba Southwest Companies," along with the Declaration of Jonathan T. Hyman, Counsel for Southwest. In its Brief in Opposition, citing the Affidavit of Mr. Tomasone, Southwest states that it is a general contractor that performs a variety of construction-related services to customers, within and outside the territorial jurisdiction of the CBA. Southwest argues that the assumptions made by the Auditor were unreasonable because Southwest "does not perform any waterproofing work" and that "roofing and waterproofing work performed" within the jurisdiction of the CBA "comprises only one percent of Southwest's overall business measured by revenue and hours." Southwest asserts that it has now "come

-6-

forward" through the Affidavit of Mr. Tomasone "to create a genuine issue of material fact as to the calculations" of the Auditor.

In addition to the foregoing, Southwest argues for the first time in its Opposition Brief that it had previously notified the Local 44 of its intent to terminate its participation CBA as of April 30, 2017, attaching a Letter dated December 8, 2016 addressed to "United Union of Roofers, Waterproofers, & Allied Workers Local No. 44" from Mr. Hyman ("the Letter") as evidence of the same. The Letter was never identified or produced by Southwest during the audit process or at any point during discovery in this case.

The Funds filed their Reply Brief on July 31, 2020. (Docket #44.) The Funds argue that the Court should reject Southwest's attempt to create issues of fact through the self-serving, conclusory and unsupported statements from Mr. Tomasone and Mr. Hyman. The Funds state that the sworn statements refer exclusively to "Southwest Companies All Purpose Contractors, Inc.," an entity that is not a party to this lawsuit and, that regardless, the statements should be rejected because they were submitted "without any valid supporting documentation." The Funds point to the fact that Southwest's assent to the CBA was executed in 2003 – 9 years before Southwest Companies All Purpose Contractors, Inc. existed – and that the scope of work performed by Southwest Companies All Purpose Contractors, Inc. is immaterial to the work performed and actions taken by Defendant, Southwest Refinishers, Inc.

Along with their Reply Brief, the Funds also filed a Motion to Strike the December 8, 2016 Letter attached to Southwest's Opposition Brief. (Docket #45.) Pursuant to Fed. R. Civ. P. 26 and 37(c)(1), the Funds argue that Southwest's failure to identify or produce the Letter in its Initial Disclosures or at any time during discovery in this case was unduly prejudicial to the

Funds and that the Funds have provided no explanation or justification for their failure to produce the Letter sooner. The Funds disputed ever receiving the Letter and argue that the late disclosure made it impossible to fully investigate the drafting, mailing and potential receipt of the Letter. On October 1, 2020, the Court granted the Funds' Motion to Strike, finding that Southwest had failed to comply with the requirements of Fed. R. Civ. P. 26 by failing to identify or produce the Letter sooner and had otherwise failed to demonstrate that its failure to produce the Letter was substantially justified or harmless.

### III. Standard of Review.

Summary judgment is appropriate when the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a). The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex v. Catrett*, 477 U.S. 317, 323 (1986). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. The court will view the summary judgment motion in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Summary judgment should be granted if a party who bears the burden of proof at trial

does not establish an essential element of their case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. Ohio 1995) (citing *Celotex*, 477 U.S. at 322). Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. Mich. 1995) (citing *Anderson*, 477 U.S. at 252). Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citations omitted).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party. The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. Ky. 1995). FED. R. CIV. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

The Federal Rules identify the penalty for the lack of such a response by the nonmoving party as an automatic grant of summary judgment, where otherwise appropriate. *Id.*

As a general matter, the district judge considering a motion for summary judgment is to examine "[o]nly disputes over facts that might affect the outcome of the suit under governing law." *Anderson*, 477 U.S. at 248. The court will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter. *Id.* at 249. The judge's sole function is to determine whether there is a genuine factual issue for trial; this does not exist

unless "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.*

In sum, proper summary judgment analysis entails "the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

**IV. Discussion.**

ERISA, 29 U.S.C. § 1059(a)(1), requires an employer participating in an employee benefit plan to maintain records with respect to each of its employees sufficient to determine benefits due. The CBA permits an audit or examination of employee records, at the discretion of the Auditor, to determine whether full payment has been made to the Funds for work performed by its employees that falls within the jurisdiction of the CBA. An employer's failure to maintain proper records "shifts the burden to the employer to prove that the work performed was covered or not covered." *Mich. Laborers' Health Care Fund v. Grimaldi Concrete, Inc.*, 30 F.3d 692, 695-96 (6th Cir. Mich. 1994)(citing *Operating Eng'rs Pension Trs. v. B&E Backhoe, Inc.*, 911 F.2d 1347, 1354 (9th Cir. Cal. 1990); *Brick Masons Pension Tr. v. Indus. Fence and Supply, Inc.*, 839 F.2d 1333, 1337-79 (9th Cir. Cal. 1988)); see also *Trs. of Detroit Carpenters Health & Welfare Fund v. River City Constr. Co.*, 99 F. App'x 612, 615 (6th Cir. Mich. 2004); *Trs. of Painters Union Deposit Fund v. Ybarra Constr. Co.*, 113 F. App'x 664, 668 (6th Cir. Mich. 2004). In the absence of evidence demonstrating the actual hours worked within the jurisdiction of the CBA, "the auditor's report is sufficient proof of the contributions owed to warrant summary judgment." *River City*, 99 F. App'x 612, 614-15; see also *Pace Indus. Union-*

*Management Pension Fund v. Dannex Mfg. Co.*, 394 F. App'x 188, 197 (6th Cir. Tenn. 2010); *Bds. of Trs. of Ohio Laborers' Fringe Benefit Programs v. Jenkins*, 283 Fed. App'x 315, 319 (6th Cir. Ohio 2008); *Ybarra*, 113 Fed. Appx. 664, 668-69; *Mich. Laborers' Health Care Fund v. Taddie Constr., Inc.*, 119 F. Supp.2d 698 (E.D. Mich. 2000).

Southwest was notified it would be audited in November 2017, over three years ago. This case was filed in April 2018. Southwest has had <u>years</u> to provide any and all relevant information to the Auditor. The record in this case demonstrates the Funds and the Auditor were generous and obliging in their efforts to facilitate this process. Southwest was given ample opportunity to produce additional documentation, even discussing the Report with the Auditor and being given specific examples of the information it could produce to rebut the Auditor's findings. Southwest did not do so and, instead, submitted a self-serving and unsupported Affidavit with its Brief in Opposition – over two years after this lawsuit was initiated – referencing a company not a party to this lawsuit to, in its own words "create a genuine issue of material fact." Southwest failed to maintain accurate records as required by ERISA and failed to provide any records or substantive evidence whatsoever to rebut the calculations of the Auditor. Accordingly, the Funds are entitled to an award of unpaid fringe benefit contributions found due and owing for the period of January 1, 2016 through June 30, 2019 in the amount of $4,688,456.59.

Pursuant to Article XX, Sections 5 and 6, of the CBA, and ERISA, 29 U.S.C. § 1132(g), the Funds are also entitled to liquidated damages, interest and attorneys fees pursuant to Article XX, Sections 5 and 6 of the CBA, including a delinquency assessment of 10% of the amount due ($468,845.66) plus 2% interest per month thereafter; all court costs, attorneys' fees and other expenses incurred by the Trustees in the collection of the delinquent contributions (to be briefed

separately); and, the costs of the audit and examination given the substantial deficiency in payments ($1,833.00). Without any opposition from Southwest, the Court finds these amounts to be warranted pursuant to ERISA and the express terms of the CBA.

**V.     Conclusion.**

For the foregoing reasons, the Motion for Summary Judgment filed by the Funds (Docket #36) is hereby GRANTED in its entirety. The Funds are hereby entitled to an award of unpaid fringe benefit contributions found due and owing for the period of January 1, 2016 through June 30, 2019 in the amount of $4,688,456.59; a delinquency assessment of 10% of the amount due ($468,845.66) plus 2% interest per month thereafter; court costs, attorneys' fees and other expenses incurred by the Trustees in the collection of the delinquent contributions (to be briefed separately); and, the costs of the audit and examination given the substantial deficiency in payments ($1,833.00).

The Funds shall submit a detailed Motion for Attorneys' Fees, Costs and Expenses within 14 days of this Judgment. Southwest shall have 14 days thereafter to respond.

IT IS SO ORDERED.

_____
DONALD C. NUGENT
Senior United States District Judge

DATED: January 29, 2021